No. 40,354

H. U. JACKSON, Administrator of the Estate of Prudence M. Jackson, Deceased, *Appellee*, v. BILLY DEAN WEESE, *Appellant*.

(305 P. 2d 839)

Opinion
filed January 12, 1957.

Terry E. Relihan, Ted D. Relihan and A. W. Relihan, all of Smith Center, were on the briefs for the appeallant.

Robert Osborn, of Stockton, argued the cause and Lloyd C. Bloomer, of Osborne, was with him on the briefs for the appellee.

The following opinion was prepared by SMITH, C. J., and approved by the court prior to his retirement from the court, and is now ordered filed as the opinion of the court.

This was an action for damages on account of the wrongful death of the wife of plaintiff. Judgment was entered overruling the demurrer to plaintiff's petition. Defendant has appealed.

The petition alleged the residence of the parties; that deceased and her husband lived in a house on the east side of First Street adjoining the north limits of the city, which was also designated as a federal highway; that it was a paved street forty feet in width, consisting of twenty-four foot paved slab and an eight foot paved area on each side of the slab; that it was curbed at the place where the events in question transpired; that there was close to the area where the events occurred a sign designating the point as the north city limits and another sign stating the speed limit to be thirty miles an hour, both clearly visible; that from a point approximately a mile north of the north city limits of the city, Highway 281 extends south to the city limits of the city and on through the city on First Street; that the street is level and straight and there was nothing to obstruct the visibility of persons approaching the city from the north; that at the point in question First Street is not crossed by any side or cross streets for a distance of approximately 1,617 feet south of the north city limits of Osborne; that there are no sidewalks or footpaths for pedestrian foot travel along the east side of First Street for a distance of approximately 175 feet south of the north city limits of the city and there are no sidewalks or footpaths for pedestrian foot travel along the west side of

First Street for a distance of approximately 820 feet south of the north city limits of the city and that First Street was commonly used by people residing along First Street for pedestrian foot travel and for crossing First Street from one side to the other for a distance of approximately 1,617 feet south of the north city limits of the city; that on November 5, 1954, Prudence was sixty-three years of age; was in normal health and active for her age; she had good eyesight; her hearing was impaired but she used a hearing aid by means of which her hearing was normal; that on November 5, 1954, she was wearing her hearing aid, which hearing aid was operating; that at that time defendant was driving a new 1954 Mercury automobile belonging to his father, with one passenger; that he had resided in the City of Osborne for a considerable period of time and was familiar with the streets of the city; that defendant was familiar with the traffic ordinances of the city and the traffic laws of the state; that he knew First Street was used for pedestrian foot travel and there were no cross streets crossing First Street at the place in question; that on the day in question he drove north on First Street and traveled north on First Street to a point approximately one-fourth mile north of the city limits to the intersection of Highways 281 and 24; that defendant turned his automobile around at the intersection and started south toward Osborne on Highway 281, causing the automobile to be accelerated from a stop at the stop sign approximately one-fourth mile north of the north city limits of the city to a speed of approximately seventy miles per hour prior to the time the automobile reached the city limits; that there were no other automobiles traveling along Highway 281 at the time and the highway was clear, open and unobstructed, and defendant had every opportunity to observe whether there were any persons or vehicles on the street south of the north city limits of Osborne; that at the time and place approximately at 1 o'clock in the afternoon Prudence left her home east of First Street and walked out to the east curb of First Street in front of her home and removed from the mail box in front of her home certain letters and other mail found therein; that she then proceeded to start across First Street in a westerly direction; that she was wearing a light colored dress; that it was daylight and the road was dry and in good condition; that defendant operated the automobile toward the vicinity of Osborne at the approximate speed of seventy miles per hour; that prior to the time he reached

the north city limits of Osborne, Prudence had started to cross the street in a westerly direction from a point in front of her home approximately one hundred sixty feet south of the north city limits of Osborne; that she was plainly visible to any persons driving in a southerly direction along Highway 281; that the defendant either saw Prudence or was charged with the duty of seeing her at the time and place; that in addition, her presence was called to the attention of defendant by the passenger in his automobile; when the automobile was approximately 300 feet north of the north city limits of Osborne and south of the north city limits of Osborne on First Street defendant without attempting to slow down his automobile and in violation of the ordinances of the city and the state laws continued south from the north city limits of Osborne on the west lane of the twenty-four foot slab hereinbefore described; that at the time the automobile entered the city limits of Osborne, Prudence was over halfway across the street, traveling in a westerly direction; that the defendant continued to operate his automobile in a southerly direction without heeding the city limit sign and speed sign at the north city limits and in violation of the ordinances and statutes; that at a point approximately seventy-five feet north of the path of Prudence, defendant turned his automobile in a southwesterly direction and in the direction Prudence was walking and struck Prudence with the front part of his automobile at a point approximately thirty-three feet west of the east curb of First Street and approximately seven feet east of the west curb of First Street; that in striking Prudence the automobile lifted her in the air and carried her sixteen feet in a southwesterly direction to the west curb of First Street, hurling her through the air for a  distance of approximately eighty-five feet into and onto a field located west of First Street, by reason of which she suffered severe injuries, from which she died; that such injuries and death were the immediate consequence of the reckless, willful and wanton acts of defendant in disregard of the safety of Prudence and in violation of the ordinances and statutes; that as a direct result of these injuries and death, her surviving husband and son were required to pay doctor bills and funeral expenses and have suffered mental anguish to their damage in the sum of $15,000.

In his answer defendant admitted the allegations about the various physical details; admitted that he drove his car owned by his father on the 5th day of November, 1954, and that Eddie Miller

was with him, but denied that he was at any time driving at an unlawful, dangerous or excessive rate of speed or in a negligent, reckless or wantonly unlawful manner; admitted the ordinances of the city; denied each and every material allegation and as an affirmative defense charged that Prudence was injured at the time and place alleged in the petition and as a result of her injuries she died, but specifically denied that she sustained injuries from which she died and as a result of defendant's acts of wantonness nor that he was guilty of any willful or wanton conduct but deceased herself was guilty of acts of willfulness and wantonness, which directly contributed to her injuries and death and because she ran directly in front of the car being driven by defendant at the time and place of the accident and in such a manner that it was impossible for defendant to avoid running into her and while defendant was driving his car in a careful and prudent manner on the proper side of the highway; that she well knew that the car driven by defendant was approaching; that by her conduct she led defendant to think and believe she saw his car approaching by stopping on the east side of the pavement and looking directly at the car and then suddenly and without warning running directly into the path of the automobile in such a way as to render it impossible for defendant to avoid striking and injuring her; that he did everything he could do while acting in the state of an emergency to avoid the striking of decedent but by her acts of wantonness and carelessness she rendered it impossible for him to do so.

The reply was a general denial.

Some time later plaintiff moved the court for an order permitting him to file an amended petition because he had discovered new facts pertaining to his cause of action which by reasonable diligence he could not have found at the time of filing his petition. There was a hearing on this motion and it was granted.

Plaintiff filed an amended petition in which up to the point of the actual occurring of the injury and death was substantially the same as the first petition. He then alleged the fact of a car being driven along Highway 281 along the west half of the highway close to where the injury occurred at a speed of approximately thirty miles an hour by one Duntz. He then described how deceased left her mail box and started across the street; that defendant continued to operate his automobile at a speed of sixty-five miles an hour; that his automobile was being driven on the west

side of the street and behind the automobile of Duntz; that Prudence had started to cross the street at the place in question; she was plainly visible and that defendant operated his automobile in an easterly direction in order to pass the Duntz car, turned and swerved to the right and in a southwesterly direction without heeding the city limit sign and speed signs and in violation of the ordinances and statutes and at a point approximately seventy-five feet north of the path of Prudence; that his automobile so driven and operated by defendant struck Prudence at a point approximately thirty-three feet west of the east curb of First Street and approximately seven feet east of the west curb of First Street; that his automobile struck Prudence, with the result which has already been alleged. The amended petition then said her injuries and death were the consequence of the reckless, willful and wanton acts of defendant and in violation of the ordinances and statutes and then specifically set forth the acts: (a) in driving his automobile at a high, dangerous, unlawful and unreasonable rate of speed in violation of the ordinances; (b) in carelessly and negligently failing to keep a proper lookout for pedestrians upon the city street; (c) in carelessly and negligently failing to have his automobile under proper contol; (d) in carelessly and negligently failing and neglecting to exercise ordinary care for the protection and safety of pedestrian crossing of said city street; (e) in carelessly and negligently failing to change the course of his automobile; (f) in carelessly and negligently failing to warn deceased of his approach by sounding his horn; and (g) in carelessly and negligently turning his automobile in a southwesterly direction and into the path of Prudence who was crossing said street at said time and place; and as a result Prudence was killed.

Defendant filed a motion to make this petition definite and certain and to strike by stating where Prudence was with reference to the street and the car claimed to have been driven by Duntz and the distance therefrom and the distance from the west curb of the street; by stating the direction Prudence was going at the time she was struck; by stating the direction and speed the defendant was traveling at the time the car struck Prudence; how far south of the south side of the Standard Filling Station it was that Prudence was struck; how far the car driven by defendant traveled after it struck Prudence and before it came to a complete stop; by setting out in a

definite and certain manner the acts or omissions or both that are claimed as constituting wanton conduct; and by striking certain matter.

This motion was overruled and defendant demurred.

This demurrer was overruled—hence this appeal.

The appeal is from the order overruling the demurrer only. It was from no other order. It follows we are not concerned in this appeal with the order overruling the motions. (See *Bortzfield v. Sutton,* 180 Kan. 46, 299 P. 2d 584; also *Daniels v. Wood Construction Co.,* 175 Kan. 877, 267 P. 2d 517.)

We have, however, examined the motion to make definite and certain and to strike and neither one of them was good.

Defendant argues the petition was drawn on the theory of wantonness while the amended petition was on the theory of negligence. He argues these are inconsistent and that when the first petition was drawn on the theory of wantonness, such constituted an election and plaintiff could not thereafter carry on the action on the theory of negligence. He argues the two theories are inconsistent. This argument is not good. As a matter of fact, the only real change plaintiff made in his amended petition was to state with more detail the conduct with which he charged defendant.

After all is said and done, the amended petition charged defendant drove sixty miles an hour on a city street which was forty feet wide, swerved to the right and hit deceased while she was seven feet from a place of safety. This stated a cause of action.

The judgment of the trial court is affirmed.